We'll hear arguments next in Wolff v. Tomahawk Manufacturing. David Silke, Tomahawk Manufacturing Good morning, Your Honors. May it please the Court and Counsel, my name is David Silke and I represent Tomahawk Manufacturing in this matter, and I would like to reserve three minutes on rebuttal, please. Please keep an eye on the clock. So, the District Court erred in this matter by denying Tomahawk's motion to compel arbitration of Mr. Wolff's claim for breach of contract under the 2010 confidentiality agreement. This Court should reverse the District Court and find that Mr. Wolff is compelled to pursue his claims in arbitration. This case involves technology and equipment for meat processing called Fiber Oriented Technology, or FOT. Mr. Wolff and Mr. Turner, the President and CEO of Tomahawk, met in November 2010 and began discussing the development of this particular terminology, which began a long business relationship. The 2010 confidentiality agreement was entered into between Mr. Wolff and Tomahawk, and they subsequently both formed separate entities and entered into three confidentiality agreements in 2011. The reason I mention this, I know it's in the brief, is that the confidentiality provisions were identical in the 2011 agreements to the one in the 2010 agreement. Then, in 2012, FormTech and Spherical IP, the companies owned by these respective individuals, entered into this FOT agreement to continue to develop this technology. The 2012 FOT agreement includes an arbitration provision, and it's our position that Mr. Wolff's claim that he asserted in court in Oregon is mandatory and subject to the mandatory arbitration provision in the FOT agreement. Can I ask you, suppose we agree with you that because the 2012 agreement with the arbitration clause incorporated everything that came before it, that the subject of this dispute is covered by the arbitration clause. There is still the problem that neither Mr. Wolff nor Tomahawk is actually a party to that agreement. You need to be able to show both that as a non-signatory, Tomahawk can enforce it, and that as a non-signatory, Wolff can be bound by it. Maybe you can start with, what did you tell the district court to explain why both of those two things was the case? Well, the district court was informed that under Wisconsin law, which is what applies in this case, non-signatories can both enforce arbitration agreements and have arbitration agreements enforced against them, and that's the Meyer case. What case are you relying upon from Wisconsin? That's the Meyer case from just last year in 2021, and the Meyer case stands for the proposition, it explores this very issue. And what they said in the Meyer case was it's a fact-specific inquiry depending on the relationship of the parties. And one of the issues is whether the parties anticipated an ongoing relationship. And in this case, the FOT agreement was intertwined with the prior agreement, and therefore was a continuation of the discussions about technology and confidential information. Let's go back to the Meyer case, though, because there's one very important distinction there, and there was a personal guarantee. So that was a direct link. So I don't see any Wisconsin case that says where you have a non-signatory and another non-signatory that you're going to be able to bind them. Do you have anything besides the Meyer case? Well, in addition, there are the general principles of contract law and equitable estoppel and agency, where Mr. Wolf, as the owner of Spherical IP, was in a position to personally obligate both himself as an agent and other agents to the prior agreement. And this is where I'd like to point out that we did submit supplemental. I kind of want to break it down because agency and equitable estoppel were not what was presented to the district court, and that comes up in the appellate briefing. So in the district court, as I understand it, what the district court is saying is that your client didn't provide any proof that this clause was somehow, you know, retroactively incorporated, and you didn't offer any proof on agency. Then, when you get to the court of appeals, you offer two new legal theories. So I'm having . . . if I'm sticking with the district court record and what was offered there, you haven't got anything more on appeal than you have there, unless I'm missing something. Well, this would probably be a good time to mention that we've always taken the position that because there's an arbitration provision and a whole separate arbitration that's now happened in Wisconsin on these very confidentiality issues, that the arbitration provision is subject, is applicable to the 2010 confidentiality agreement. That's the whole . . . Yeah. That's your whole case. That's what we're talking about. That's the issue. That's the issue, not the conclusion. Well, it's a conclusion that's also been reached by that arbitration panel just recently in November, which we submitted as supplemental authority. Is that binding on us? We believe it is binding because what the arbitrators ruled is that they have the authority to interpret the 2012 FOT agreement. They've interpreted it to mean that it includes and subsumes the prior agreements, including the 2010 confidentiality agreement. So under their finding, we're now left with what would be the absurd result that either party to the 2010 agreement could assert that there was a violation of the 2010 agreement and the 2011 agreement and the FOT agreement, and they would have to bring those exact claims for the exact same violations under the exact same confidentiality provision in two different forms. They'd have to file a breach of contract claim for the 2010 agreement in court and for the 2011 agreement in arbitration, even though they're identical issues that the parties are all affected. And part of the reason, when you're talking about sort of privity of parties, is that a ruling in the arbitration or in the court matter for that matter would affect the other matter and the other parties. What's unlike the cases that were cited by opposing counsel is that the same exact people signed all these agreements. Their interests are intertwined in these confidentiality issues. But you do have corporate entities. I mean, I don't know how you get around that because you have the 2010, and then in the 2011, you actually have some corporate parties that are in the 2012 agreement. So in the 2012 agreement, when it talks about the parties have signed several NDAs, well, in fact, they had, but they, meaning the parties to the 2012 agreement, were not the parties to the 2010 agreement. So it seems to me that the contracts can be reconciled, and what I'm having some trouble with is finding Wisconsin law that supports your proposition, but even more so, it really, you would have to ignore the corporate entities in order for us to adopt your position, and that's what I'm looking for support for. And I think that one thing that I think is important to note is that the arbitrators, if you look at Section D of the award, Mr. Wolf was not a personal party to the 2012 FOT agreement or the 2011 confidentiality agreement, yet the arbitrators are requiring him personally and other agents of SPHERICAL to take certain action. So they have jurisdiction over not just SPHERICAL IP, but also Mr. Wolf individually to rectify any violations of the confidentiality agreement. Can I go back to the question of what you said to the district court? So I'm looking at page 21 of its order, which is 22 of the ER, and so the court identifies the problem that Wolf is not a signatory, then you're trying to enforce it against him, and Tomahawk is not a signatory and you're trying to enforce it. And then it says, Tomahawk asserts only one argument in its briefing, incorporation by reference. That's the end of the quote. It doesn't say estoppel or agency. So was the district court wrong, or was it correct that you did not advance those theories? Well, we are arguing incorporation by reference. You are? We are. Did you? Okay, right, you are arguing that, but I'm sorry, did you advance any of the other theories below? Well, I would say that the incorporation by reference argument, by its very nature, starts implicating contract, equitable estoppel, and agency issues, just as they're addressed in the Meyer case. All those issues are addressed within the exceptions to non-signatory signing. But even if we just focus on incorporation, we have a provision in the FOT agreement saying that the prior NDAs are part of that agreement, and you've now got the arbitrators saying that they have jurisdiction to make decisions about the 2010 agreement. So if the 2010 agreement is incorporated into the 2012 FOT agreement, then that agreement includes the 2010 agreement. It's as if they're stapled together and read together, and because there's an arbitration provision in the 2012 FOT agreement, there's necessarily the ability to require arbitration for claims that arise under the 2010 agreement. The 2010 agreement does not have a foreign selection provision. It's not inconsistent with arbitration. And perhaps more importantly, Mr. Wolf himself requested the arbitration provision in the later agreements and signed the agreement. So he, on behalf of his entities as an agent, has obligated himself to an agreement that subsumes or incorporates the prior 2010 agreement, and therefore he can be ---- But let me stop there, please. That kind of goes back to the other question I asked you. You just assume it includes the 2010. It doesn't say that. It said several NDAs. It says the parties. And so then you look at the parties to what I guess you call the FOT agreement, and the parties to that agreement are FormTech and Spherical, both of whom had signed as corporate entities prior NDAs. But those parties, which are referenced in the FOT agreement, were not the parties that signed the 2010 agreement. So that's where there's kind of this disconnect. And so you're assuming that when it says that they've signed several NDAs, that even though it doesn't say it, that includes 2010. Yes, and to the extent there was ever any ambiguity about that, it refers to all the NDAs. If there's any ambiguity about it, it seems that it doesn't include them because it talks about the parties, and the parties to the FOT agreement are different, which kind of gets us to this fundamental issue of does it matter. Surely they are related in the sense you have the same principles, but you don't have the same corporate entities. And in general, we don't just skip over that. It's not just a fiction to have a corporate entity. So that kind of goes back to Judge Miller's question of, you know, what was really argued in the district court. Yes, and just to answer that before I sit down, the issue is all the NDAs are subject to it. In fact, the arbitrators have now specifically ruled disclosures made pursuant to the 2010 NDA are subsumed within and subject to the 2011 NDA and FOT agreement. They said, we have the ability to interpret the 2012 FOT agreement, and we rule that disclosures, in other words, violations of the 2010 NDA, are subsumed within the FOT agreement, which has the arbitration provision. So I will reserve the rest of my time. Thank you. Thank you. Mr. Morris? Thank you, and may it please the court. I'm Mike Morris, and I represent the plaintiff, James Walsh. Judge Simon's opinion thoroughly explains the applicable law and the application of the law to the facts. My argument will simply center on certain key points that I wanted to emphasize. The first is the difference between the technologies governed by the 2010 confidentiality agreement and those governed by the 2012 FOT agreement. They are different. The technology defined in the FOT agreement involves inventions of my client relating to the use of a Venturi effect using spherical geometry and any fiber orientation. This is the definition contained in the 2012 FOT agreement. These concepts are explained in my client's declaration, but the short summary of that is my client discovered how a principle of physics called the Venturi effect could be applied to meat-forming machines to align the meat fibers and make an improved meat patty. That's the simple summary of what he discovered. The FOT agreement then was an agreement between two entities to exploit that technology to obtain patents and then to sell products using it. On the other hand, the confidentiality agreement involves non-FOT innovations and inventions. They do not involve spherical geometry, the Venturi effect, or fiber orientation. The other important thing I would like to say is that the 2010 confidentiality agreement does not just govern matters that were disclosed at that time of that agreement. It included anything that would be disclosed in the future. In fact, many of the things that are being claimed in this case came after the 2010 confidentiality agreement. My client provided several examples of those in his declaration. For example, he designed a new operating system for the machines. He designed a gradient breather plate, which is unique to the industry. He designed and implemented functioning hour meters for the machines. These innovations are unrelated to fiber orientation or the Venturi effect. As I said, they came after the agreement was signed, and they're governed by the 2010 agreement. So what do you make, then, of the arbitrator decision that lumps all of these together and says that 2010 is also subject to arbitration? Well, the arbitrators did not find that the 2010 agreement was subject to arbitration. That's the first thing I'd like to explain to the panel. All the arbitrators decided is the same thing that Judge Simon decided, that the 2010 agreement, the confidentiality provisions, became part of the FOT agreement. But there was no finding on the merits or in any way involving these non-FOT innovations. They were not part of that case. So the suggestion that somehow they ruled on this is simply not correct. You can read their award, and you'll find nothing saying that Judge Simon is in error. In fact, in their award, they recognize the continuing tendency of our case here. They notice that it's still pending, and they're not saying that Judge Simon is in error or making any ruling on that subject. But do you agree with counsel for Tomahawk that the arbitrators decided that the 2010 is incorporated into the FOT agreement? I believe what they said is any disclosures regarding FOT that were done prior to the 2012 agreement then became subsumed into the FOT agreement. We don't dispute that. If it had anything to do with FOT, the later agreement was the parties, how they were going to address that technology. And that was their complete agreement on the technology. They each created entities. My client assigned to the entity the invention, and then those parties dealt with FOT. So the assignment of – well, it looked like Formtech had various patents and was continuing to apply for patents, but Spherical assigned its rights only to the technology listed in the FOT agreement. Is that right? Well, my client is the inventor, and my client is just a minority holder of Spherical IP, by the way, not the full owner, but he assigned his inventions to his LLC, and then that LLC and Formtech formed the FOT agreement, and then Formtech went forward and obtained the patents at their expense. But you're saying then only as to the technology listed in the FOT agreement, which is the Venturi and the fiber orientation. Correct. Absolutely. And that's all the arbitrators are saying also. They're making no ruling regarding the issues in this current case and the technology which is the subject of this case, which is non-FOT technology. Mr. Morris, what dignity are we to give to the arbitrations award in this case? You heard your opposing counsel suggest that it's binding on this court. What is your view? I do not see how some private arbitrators can issue a ruling binding on the federal court. The federal court has already made its ruling prior to the arbitrators, and I do not believe the arbitrators did that. They made no ruling contrary to that of Judge Simon, but I don't see that they have the authority to do it if they wanted to. So I'm afraid that the federal court is paramount on this issue. But as I say, I don't see how you can even read the award to say that they came up with something inconsistent or contrary to what the district court ruled in this case. Suppose we thought, and I know you don't think this, but suppose we thought that this dispute is within the scope of the arbitration clause in the 2012 agreement. Could you address the decision in Meyer? I mean, doesn't that suggest that even though the parties are different, it should still be enforceable? Well, let's be clear about the Meyer case. The Meyer case was a case where the non-signatory was able to enforce the arbitration clause against a signatory. And the court made very clear the difference between that scenario and one where the signatory sought to enforce a clause against a non-signatory. And so the Meyer case is not controlling precedent in this case. It's a different set of facts. It's the reverse set of facts. There's been no Wisconsin case that certainly I have found, I don't believe counsel's found, or even that the Meyer case could find where the contrary was true, where under Wisconsin law, an arbitration clause was imposed against a non-signatory to the contract. So the Meyer case... There are a lot of cases on more... Excuse me. I'm sorry. Aren't there a lot of cases suggesting that under principles of estoppel, when you have somebody who's closely tied to one of the parties and has benefited from the agreement that that party is part of, that they can be bound by the arbitration clause? I don't know that there are a lot of cases. I haven't found a lot of cases. I think that, as Judge Simon said, these principles can be applied in any contract case, whether in any context. You can always try to raise estoppel issues. But estoppel is going to require some specific facts. And in this case, as Judge Simon pointed out, these parties, the Tomahawk did not raise this issue below. And they're just trying to raise it on appeal. And the record can't support an estoppel here. And I don't think the court should address an issue that wasn't raised below. There's no record to support such a finding. So whether there's some case out there where they use this estoppel argument to bind somebody, I don't know. I haven't found it, but perhaps there are... Perhaps it's there, but I don't think it applies to what we have going on here. If I have a... If I may, I'd like to just, again, briefly say one of the other concepts in this case, which is this whole idea of incorporation by reference. As you know, Judge Simon ruled that the 2010 confidentiality agreement was incorporated into the FOT agreement. But let's look at his holding. The judge said, it merely means that the earlier contract or its specific terms that have been incorporated are also part of the later contract. So what happened here is rather than spend three pages typing out the same confidentiality provisions, the FOT agreement simply pulled those materials into its agreement and incorporated them into its agreement. That's all that happens. That's all that incorporation by reference means. The court explained it even better. It said for the FOT agreement to be the single agreement for all entities and persons involved in the relationships governed by all the agreements, including non-signatories to the FOT agreement, the FOT agreement would have had to superseded or replaced the confidentiality agreements. Well, Tomahawk here concedes that the 2012 FOT agreement does not supersede the earlier agreements. This is the position they've set forth in their briefing. So then the judge also said that Tomahawk does not assert that the arbitration clause of the FOT agreement was itself incorporated into any other agreement, much less any between Wolf and Tomahawk. So it was a one-way thing. The 2010 confidentiality provisions moved over to the FOT agreement, but nothing moved in the other direction. So just to be clear, I guess your bottom line is that your federal law suit should proceed in federal court and the arbitration is what the arbitration is? The arbitration is what it is. It dealt with FOT issues. It did not deal with the issues that are presented in the current case, and the arbitrators did not in any fashion say that those claims had to be arbitrated. And it certainly wasn't part of that case that was handled in arbitration. So unless the court has some further questions for me, I believe that summarizes the points I wish to make today. Thank you, counsel. Thank you. Mr. Silkey. So with my remaining time, I'd just like to address this incorporation argument. The reason the arbitrators didn't decide the issue of any liability under the 2010 confidentiality agreement is because it's not yet before them. They only decided the issues that were before them. But what they specifically wrote was, disclosures made pursuant to the 2010 NDA are subsumed within and subject to the 2011 NDA and FOT agreement. Tangentially, we note that Respondent incorrectly asserts in its post-hearing memorandum that the panel is bound by the ruling of the district court on this issue. That is not correct. We have jurisdiction over the parties to the 2011 NDA and the FOT agreement and the authority to rule on the interpretation of those contracts. And what they interpreted to mean was that the 2010 agreement is subsumed within it, meaning it's part of the agreement that contains the arbitration provision. And this argument that it's two different types of claims is just simply not true. The declaration of Mr. Wolf, which is the excerpt of record page 88, says, on December 12, 2010, I notified Turner of certain proprietary innovations that were to be covered by the NDA. They included the FOT. So the very issue about the FOT was in discussion from the beginning. And what Mr. Wolf is now claiming is a violation of the confidentiality provision of the 2010 agreement, which is identical to the 2011 agreement, both of which have been incorporated into the FOT agreement. So we're talking about the exact same confidentiality provision in the arbitration. There was a claim asserted against Mr. Wolf for violations, and now he's in a separate forum seeking a breach of contract claim in court when it should have been pursued in arbitration. It just would result in just absurd results that you'd be litigating the exact same issue in two different forums. That's the whole purpose of it with the Federal Arbitration Act and having consistency. And so in closing, we're asking for the court to reverse the district court and issue a finding that count one, meaning the breach of contract claim, must be submitted to arbitration. Before you sit down, I just wanted to clarify one thing. There's been kind of a blizzard of filings related to motions to seal, and they don't seem to all match up because you had filed a motion to seal the award, which made sense, but then that text of your motion doesn't actually reference the award itself, and it seems to be a duplicate of an earlier motion. And then Mr. Wolf's counsel files a motion to seal his letter in response to your filing. So all I can say is perhaps you can sort out between yourselves what it is you want filed under seal with some precision so that we can make a determination on that and so that to the extent that we were to grant the motion to seal, there's no gap in what you want to be confidential and what you don't. The short answer is that there's a confidential version of the arbitration award that removes certain things that are confidential, and that still needs to be filed under seal as we agreed with Mr. Morris. You can clarify that in a motion, either joint or otherwise, because it's not clear from what's been filed so far. We'll make sure we follow up on that. Thank you. Thank you. We thank both counsel for their arguments, and the case is submitted.
judges: O'SCANNLAIN, McKEOWN, MILLER